

**FILED**

**8:17 am, 5/19/21**

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

PPEX, LLC,

      Plaintiff,

vs.

BUTTONWOOD, INC. d/b/a BTTN,
JAKE GARWOOD and JACK MILLER,

      Defendants.

Case No.  21-CV-0053

**ORDER GRANTING MOTION TO SET ASIDE DEFAULT AND
DENYING MOTION TO DISMISS OR TO STAY THE CASE**

THIS MATTER is before the Court on Motion by Defendants pursuant to FRCP Rule 55(c) to set aside the default entered by the Clerk of Court (CM/ECF Document (Doc.) 28) and Motion by Defendants to dismiss the case or, in the alternative, to stay the litigation. Doc. 26.  Both motions are opposed by Plaintiff. Doc. 30, 31.  For the following reasons, the Court sets aside the entries of default and denies Defendants' motion to dismiss.  Defendants shall answer and respond to Plaintiff's motion for preliminary injunction as required herein.

Background

PPEX was formed on April 2, 2020 and, from approximately May 24, 2020 to January 29, 2021, Defendant Garwood served as PPEX's Chief Operating Officer. Doc. 1, ¶¶ 14, 18.  From approximately July 20, 2020 to February 1, 2021, Miller served as PPEX's

Director of Logistics. *Id*. at ¶ 19. On January 17, 2021, PPEX arranged a buyout plan with Garwood where PPEX agreed to buy Garwood's purported membership interest in PPEX and Garwood would remain employed as PPEX's Chief Operating Officer. *Id*. at ¶ 28. That buyout plan was captured in a settlement agreement, effective January 24, 2021, wherein Garwood agreed to forfeit his right to receive fifteen percent of the outstanding units of Plaintiff in exchange for $300,000. The settlement agreement contained the following dispute resolution clause which reads in relevant part:

> Any controversy or claim related to this Agreement shall first be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association then in effect and before a single neutral arbitrator located in Seattle, Washington.

Doc. 27-1. The settlement agreement further provided that the parties would execute a mutual release. The executed mutual release provided broad releases by Plaintiff and Defendant Garwood as to all claims and demands of every kind and nature "that arise out of or are in any way related to events, acts, conduct, or omissions occurring prior to the Effective Date of this Agreement…". Doc. 27-2. The mutual release agreement also has an arbitration clause which reads in relevant part:

> Except for any claim for injunctive relief arising out of a breach of a party's obligations to protect the other's proprietary information, the parties agree to arbitrate, in King County, Washington, pursuant to the rules of the American Arbitration Association in effect as of the date such arbitration is sought, any and all disputes or claims arising out of or related to the validity, enforceability, interpretation, performance or breach of this Agreement, whether sounding in tort, contract, statutory violation or otherwise, or involving the construction or application or any of the terms, provisions, or conditions of this Agreement…".

*Id*.

On January 28, 2021, Garwood took an unapproved vacation and stopped responding to all emails. Doc. 1, ¶ 29. Garwood's employment was terminated the next day. Defendant Miller quit his term as an independent contractor at PPEX on February 1, 2021. *Id*. at ¶ 30.

On March 18, 2021, Plaintiff filed its complaint against Defendants alleging misappropriation of trade secrets under federal and state law, violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq*., civil conspiracy, conversion and breach of fiduciary duty stemming from Defendants' alleged use of Plaintiff's confidential and protected trade secrets to form a direct competitor. Doc. 1. Plaintiff seeks injunctive and monetary relief, exemplary damages, attorneys' fees and costs and other relief as may be deemed just and proper. Defendants failed to timely answer or otherwise respond to the complaint.

On March 20, 2021, Defendant Garwood submitted a demand for arbitration, naming Plaintiff as respondent and alleging "[t]he parties separated their professional relationship and signed a Settlement and Mutual Release…". Doc. 27-3. Defendant Garwood has requested an arbitration order against Plaintiff for full payment under the settlement agreement. *Id*.

Based on Defendants' failure to timely respond to the complaint, Plaintiff filed motions for entries of default against Defendants. Doc. 17, 18. On April 13, 2021, the clerk entered defaults. Doc. 19, 20.

On April 14, 2021, the Court entered an order requiring Plaintiff to file a certificate of service of its motion for preliminary injunction to Defendants Garwood and Miller, as

well as a supplemental brief addressing the Court's personal jurisdiction over these two Defendants. Doc. 21. On April 16, 2021 and April 21, 2021, Plaintiff complied and filed an affidavit of service and a supplemental brief on personal jurisdiction. Doc. 22, 21.

On April 21, 2021, Defendants filed a motion to dismiss the complaint for forum non conveniens or, in the alternative, stay the proceeding pending the "ancillary arbitration proceeding." Doc. 26. Defendants also filed a motion to set aside default. Doc. 28.

## Motion to Set Aside Default

"The Court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In determining whether good cause exists, the Court "may consider, among other things, whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Pinson v. Equifax Credit Information Services, Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (citation and quotation omitted).

Defendants argue good cause exists to set aside the entries of default because corporate counsel was focused on arbitration as the exclusive remedy in accordance with the settlement and mutual release agreements and had continually conferred with Plaintiff's counsel about complying with those agreements and dismissing the complaint. Further, they claim Plaintiff failed to communicate during those conferrals that it would or had filed a motion for entry of default. Plaintiff responds that the entries of default were proper as Defendants blatantly disregarded this proceeding and have no excuse for the default. Plaintiff also argues it will be prejudiced because Defendants' delay in responding has inexcusably delayed adjudication of the pending motion for preliminary injunction.

4

The Court is troubled by Defendants' inattention to this proceeding and finds insufficient the excuse that their focus was on arbitration. Further, the service of the complaint is what triggers the time to file a responsive pleading, <u>not</u> a plaintiff's advisement, threat or motion seeking entry of default. Nonetheless, the Court does not find the defaults by Defendants were willful or otherwise associated with culpable conduct.

Finally, the Court does not find setting aside the defaults would prejudice Plaintiff. This matter is at a relatively early stage and the Court only very recently received a supplemental pleading by Plaintiff addressing the Court's personal jurisdiction over Defendants Garwood and Miller. Doc. 29. Indeed, Plaintiff's supplemental pleading was filed the same day Defendants filed their responsive pleading and motion to set aside the defaults. Consequently, while Plaintiff may suffer some delay in the eventual adjudication of its pending motion for preliminary injunction, the Court would not have considered it or any other substantive filing in the case without requiring Plaintiff to address personal jurisdiction.

Therefore, for the above-stated reasons and because courts prefer to decide cases on the merits, *Gomez v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970), the Court grants Defendants' motion and sets aside the clerk's entries of default. Doc. 19, 20.

<u>Motion to Dismiss or, in the Alternative, to Stay the Litigation</u>

The decision of the district court concerning whether a dispute should be referred to arbitration is a question of law. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Nevertheless, "questions of arbitrability must be addressed with a healthy regard

for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

> [A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960).

In determining the parties' intent in relation to the language providing for arbitration, courts look first to the language of the contract, which must be construed with the same meaning that "language would convey to reasonable persons at the time and place of its use." *Ultra Resources, Inc. v. Hartman*, 226 P.3d 889, 905 (Wyo. 2010) (citing *Moncrief v. Louisiana Land Exploration Co.*, 861 P.2d 516, 524 (Wyo. 1993)). The language of the contract is the best evidence of the parties' intent if that language is clear and unambiguous. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014). And if an issue is arbitrable, courts may stay any such lawsuit pending resolution of arbitration proceedings. 9 U.S.C. § 3 ("If any suit . . . be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court in which such suit is pending . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").

The scope of both arbitration clauses is clear. The settlement agreement covers controversies and claims related only to that agreement. That agreement only concerns the representations and promises contained therein which include, in part, Garwood's forfeit

of his right to receive membership interests in exchange for payment by Plaintiff. Doc. 27-1. The settlement agreement does not address in any way confidential information, trade secrets or the alleged formation by Defendants of a direct competitor.  Consequently, the dispute resolution clause requiring binding arbitration does not include within its scope the matters pled in Plaintiff's complaint.

As to the mutual release agreement, the release by Plaintiff only releases Garwood and his agents or assigns from claims "that arise out of or are in any way related to events, acts, conduct, or omissions occurring prior to the Effective Date of this Agreement" (January 24, 2021), including matters that are the subject of the settlement agreement. Doc. 27-2.  The claims brought by Plaintiff in this case relate to acts and conduct occurring after January 24, 2021.  Therefore, the covenant not to sue and the arbitration clause do not extend to the matters pled in this case by Plaintiff, as these matters are not "based in whole or in part on any matter released by" the mutual release agreement. *Id*. at ¶¶ 2, 4.  Further, if this weren't sufficiently clear, the arbitration provision excludes claims for injunctive relief arising out of a breach of a party's obligations to protect the other's proprietary information. *Id.* at ¶ 4.  Finally, neither agreement includes Defendant Miller as a party.  Consequently, Defendant Miller would remain in this case unaffected by agreements between other unrelated parties.

For these reasons, the Court will not refer to arbitration the matters pled in Plaintiff's complaint.  Defendants shall file an answer to Plaintiff's complaint or a motion to extend for good cause no later than May 26, 2021, and shall file a response to Plaintiff's motion for preliminary injunction or a motion to extend for good cause no later than June 2, 2021.

**IT IS THEREFORE HEREBY ORDERED** that:

Defendants' motion to set aside the clerk of court's entries of default (Doc. 28) is **GRANTED**; and

Defendants' motion to dismiss or, in the alternative, to stay the case (Doc. 26) is **DENIED**; and

Defendants shall answer Plaintiff's complaint or file a motion to extend for good cause no later than May 26, 2021; and

Defendants shall respond to Plaintiff's motion for preliminary injunction or file a motion to extend for good cause no later than June 2, 2021.

Dated this 19th day of May, 2021.

*Nancy D. Freudenthal*

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE